# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MSTADI WINSTON
        Plaintiff,

v.                                           Case No. 16-C-390

CAROLYN W. COLVIN,
**Acting Commissioner of the Social Security Administration**
        Defendant.

## DECISION AND ORDER

Plaintiff Mstadi Winston applied for social security benefits, alleging that he became disabled as of September 26, 2009, due to kidney disease, neck and back problems, diabetes, and other impairments. An Administrative Law Judge ("ALJ") denied the application, but on plaintiff's request for judicial review the district court sent the case back for further proceedings. In the meantime, plaintiff had filed another application, on which he was found disabled as of June 24, 2013, based on renal failure. Plaintiff accordingly amended the previous application to seek a closed period of benefits from September 26, 2009, to June 23, 2013. A different ALJ denied the amended application on remand, and plaintiff again seeks judicial review. I again remand.

**I.**

Plaintiff argues that the ALJ erred in rejecting the opinion of one of his treating physicians. The opinion of a social security claimant's treating source is entitled to "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. Stage v. Colvin, 812 F.3d

1121, 1126 (7th Cir. 2016); 20 C.F.R. § 404.1527(c). An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer "good reasons" for declining to do so. Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010). The court will reverse and remand where the ALJ fails to provide a sound explanation. See, e.g., Campbell v. Astrue, 627 F.3d 299, 306-07 (7th Cir. 2010) (reversing where ALJ relied on the absence of significant abnormal findings but read the record selectively in so finding); Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011) (reversing where ALJ misunderstood the nature of the claimant's impairment); Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice.").

Even if there are sound reasons for refusing to give the treating doctor's assessment controlling weight, the ALJ may not simply reject it; rather, the ALJ must then determine what value the assessment does merit, considering a checklist of factors, including the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinion. See Campbell, 627 F.3d at 308; Scott, 647 F.3d at 740; 20 C.F.R. § 404.1527(c); see also Bauer v. Astrue, 532 F.3d 606, 608 (7th Cir. 2008) (stating that when the treating physician's opinion is not given controlling weight "the checklist comes into play"). "'In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.'" Hunt v. Astrue, 889 F. Supp. 2d 1129, 1143 (E.D. Wis. 2012) (quoting SSR 96-2p).

In this case, plaintiff's treating neurologist, Dr. Darryl Prince, opined that plaintiff could, during an eight-hour day, sit for four hours, stand for one hour, and walk for one hour. (Tr. at

2

660.) Dr. Prince further endorsed limitations in plaintiff's ability to repetitively use his feet, to lift and carry more than 20 pounds, and to engage in movements such as bending, squatting, and reaching. (Tr. at 660-61.) Finally, Dr. Prince restricted plaintiff from exposure to heights, temperature changes, and irritants. (Tr. at 662.) Dr. Prince based these limitations on testing revealing a cervical cord lesion and peripheral neuropathy. (Tr. at 662.)

As the ALJ acknowledged in the first decision, Dr. Prince's conclusion regarding plaintiff's total ability to sit, stand, and walk during an eight hour day "would negate all work." (Tr. at 26.) However, the ALJ gave this finding little weight because it was not supported by the objective medical evidence, including MRI testing revealing "very mild" cervical findings and "largely unremarkable" lumbar findings (Tr. at 25), and plaintiff's relatively normal motor strength and gait on examination (Tr. at 26). The ALJ instead credited the opinion of a non-examining consultant, who opined that plaintiff could sustain the full range of sedentary work. (Tr. at 26, 595-602.) The ALJ further found plaintiff's claims of disabling symptoms weakened by his activities of daily living, which included attending college and volunteering for the Special Olympics (Tr. at 24), as well as the objective medical evidence (Tr. at 26).

On the first round of judicial review, the district court noted that the ALJ failed to cite any inconsistent medical evidence; the MRIs in fact showed a severe cervical lesion and degenerative disease in plaintiff's lower back; and plaintiff's normal strength and gait provided no basis for rejecting Dr. Prince's report, as plaintiff's primary problem was pain, not weakness. (Tr. at 935-36.) The court remanded the matter for reconsideration of Dr. Prince's opinion, which would include an accurate assessment of the medical imaging evidence, as described by Drs. Prince, Tylicki and Beykovsky; an explanation as to how plaintiff's activities, including attending college and volunteering for the Special Olympics, were inconsistent with Dr. Prince's

3

limitations; and specific identification of how the other evidence was inconsistent with Dr. Prince's assessment. The court further instructed that, if the ALJ declined to given the report controlling weight, the ALJ must consider the checklist factors in § 404.1527(c). (Tr. at 936.)

On remand, the ALJ stated:

The District Court ordered the undersigned to accurately assess the medical imaging evidence in the file. In February 2010, the claimant had a cervical MRI scan that revealed broad-based central and left paracentral C3-4 disc narrowing, a cavernoma at C6-7 and mild left neural foraminal narrowing at C4-5 and C5-6. The District Court criticized the prior Decision as mischaracterizing the report of Dr. Tylicki regarding the claimant's cervical spine MRI scans. Reading his report, dated February 25, 2011, it is difficult to understand what MRI scan Dr. Tylicki is reviewing. It appears to be the same scan noted above . . . . However, it is not clear from the doctor's records. Dr. Tylicki noted that the claimant had a "cord lesion at C6-C7 that actually crosses the mid line." That would be consistent with the cavernoma noted in the 2010 MRI scan. A cavernoma is a relatively rare malformation of blood vessels (called an angioma or hemangioma). Such malformations may cause neurological deficits or they may not. Dr. Tylicki did not give any indication that the claimant had any neurological deficits at that time. He simply noted the angioma as being clinically significant. In fact, there is no evidence of neurological abnormalities and an EMG of the claimant's right upper extremity in April 2013 was normal. It is also of note that the MRIs were performed almost one year prior to Dr. Tylicki's review and no treating doctor expressed concern about the results during that one year time period.

The District Court also seemed to criticize the previous Decision regarding Dr. Tylicki's interpretation of the claimant's lumbar MRI (again the date of which is unknown). However, Dr. Tylicki did characterize the MRI as "relatively unremarkable."

It is difficult to understand the District Court's reasoning regarding the analysis of the claimant's degenerative disc disease by the previous Administrative Law Judge. The previous Decision noted the claimant had relatively mild findings but still indicated the claimant would have significant limitations, i.e. being limited to less than a full range of sedentary work.

The same can be said of the analysis of Dr. Prince's opinion in which he opined the claimant could only sit about 4 hours each day and could walk/stand for two hours. The records show almost no objective evidence for such a severe restriction. As noted, Dr. Tylicki stated the claimant's lumbar MRI was "relatively unremarkable." Additionally, the EMG was normal and no neurological deficits were noted.

4

> In February 2011, Dr. Beykovsky commented on an MRI scan of the claimant's lumbar spine but again neglected to mention the date it was taken. Although he subsequently called the claimant's lumbar MRI "rather impressive" his comments indicate rather mild findings. He stated that there was multilevel facet arthrosis and diffuse canal narrowing from L3 downward. However, he also indicated that there was only mild formaminal encroachment. He noted the claimant had no clinical signs of lumbar radiculopathy.
>
> Again, it is difficult to see why Dr. Prince would limit the claimant to sitting for only 4 hours in a day. The only reason is that such restriction is based on the claimant's subjective complaints. However, the claimant is not a particularly credible witness regarding the extent of his symptoms. As noted above, the claimant was clearly exaggerating both his physical and mental symptoms when he was hospitalized for suicidal ideation in November 2011. This led to a diagnosis of malingering. Further, one would not expect someone who has such extreme pain to be able to attend school (as the claimant did in 2012 and 2013) or be able to do volunteer work activity such as the Special Olympics, Judicare and as a student ambassador, which the claimant did in 2012 and 2013. Claimant testified to performing computer activities for his volunteer work, reading and using the Internet including Facebook.
>
> This does not mean the claimant does not have restrictions because of back pain and his kidney function. But the opinions of the state agency consultants prior to the previous Decision, indicating the claimant was limited to sedentary work as well as (presumably) the opinion of the state agency consultant on the subsequent application which found the claimant was not disabled until June 24, 2013 and which was affirmed by the Appeals Council, are well supported by the preponderance of the evidence and are entitled to great weight. Dr. Prince's opinion is entitled to much less weight.

(Tr. at 809-11, internal record citations omitted.)

As plaintiff notes, the ALJ seemed more concerned about quibbling with the district court's remand order and than complying with its directives. Most prominently, the ALJ failed to first consider whether the opinion deserved controlling weight, as the district court ordered, before deciding what value the opinion did have. While it may in some cases be possible to find an implicit rejection of controlling weight in the ALJ's overall discussion of a treating source opinion, see Mays v. Colvin, 739 F.3d 569, 575 (10th Cir. 2014), the ALJ failed to provide the

5

necessary "good reasons" here.[1]

The ALJ first purported to reconsider the MRI evidence and Dr. Tylicki's interpretation thereof. The ALJ initially faulted Dr. Tylicki for failing to specify which scan he was reviewing. However, the ALJ did not explain why Dr. Tylicki's failure to specify a date diminished his opinion. The ALJ then offered her own medical opinion as to the nature and significance of the cavernoma noted on the cervical MRI. It is well settled that an "ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." Murphy ex rel. Murphy v. Astrue, 496 F.3d 630, 634 (7th Cir. 2007). Nor may an ALJ "disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion." Id. The ALJ noted that the MRIs were performed almost one year prior to Dr. Tylicki's review and no treating doctor expressed concern about the results during that one year time period. Again, however, the ALJ failed to explain why this mattered. Further, as in Herrmann v. Colvin, 772 F.3d 1110, 1111 (7th Cir. 2014),

> The administrative law judge seems to have thought that a physician's evidence can be disregarded unless he has detailed notes to back it up and other physicians provide identical evidence even if they don't contradict him – in other words no credibility without corroboration. These are insufficient grounds for disbelieving the evidence of a qualified professional.

The ALJ noted that Dr. Tylicki did characterize the lumbar MRI as "relatively unremarkable," as indicated in the first decision. However, as the ALJ later acknowledged, Dr. Beykovsky

---

[1] As the Commissioner notes, the ALJ need not address in writing each of the checklist factors. Nevertheless, the ALJ must always provide a good explanation for discounting a treating source report. See Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). That explanation is lacking here.

characterized the lumbar MRI as "rather impressive."[2] The ALJ discounted this statement by quoting some medical jargon from Dr. Beykovsky's notes, and then characterizing those comments as suggesting "rather mild findings." (Tr. at 810.) Again, the ALJ was playing doctor by making her own independent medical findings.

The ALJ then rejected Dr. Prince's opinion on plaintiff's ability to sit and walk/stand as unsupported by objective evidence, indicating that there was no evidence of neurological abnormalities and an EMG of plaintiff's right upper extremity in April 2013 was normal. The ALJ speculated that Dr. Prince's opinion was instead based on plaintiff's subjective complaints; and those subjective complaints lacked credibility, the ALJ said, because plaintiff was suspected of malingering during a November 2011 psychiatric hospitalization and because his daily activities conflicted with claims of extreme pain.

The ALJ failed to explain how the medical evidence she cited, particularly the EMG of plaintiff's right upper extremity, undercut Dr. Prince's opinion regarding plaintiff's ability to sit, stand, and walk. Moreover, she failed to consider the record as a whole in finding Dr. Prince's opinion unsupported by objective evidence. See O'Connor-Spinner v. Colvin, 832 F.3d 690, 697 (7th Cir. 2016) (remanding where ALJ cherry-picked evidence supporting his finding, ignoring contradictory information). For instance, Dr. Prince's notes reference the results of lower extremity EMG testing showing evidence of "moderate to severe motor-sensory neuropathy." (Tr. at 672.) Dr. Prince's notes also document the "peripheral neuropathy" and "cervical angioma"/"cervical cord lesion" upon which he based his opinions. (Tr. at 667, 669.) Dr. Prince further noted plaintiff's history of lower back pain and weakness of the lower

---

[2]Specifically, Dr. Beykovsky stated that the "MRI is rather impressive demonstrating diffuse degenerative disc and joint disease from L3 down to S1." (Tr. at 676.)

7

extremities. (Tr. at 689.)

The ALJ also failed to explain how plaintiff's activities undercut his claims or the restrictions in Dr. Prince's report. Although it is appropriate for an ALJ to consider a claimant's daily activities when evaluating credibility,[3] "this must be done with care." Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Id. Further, the ALJ must explain why particular activities undercut the claimant's credibility; it will not suffice to simply provide a list of activities, without linking them to any of the claimant's alleged restrictions. Shafer v. Colvin, No. 13-C-0929, 2014 BL 124764, at *11-12 (E.D. Wis. May 05, 2014).

The ALJ on remand again relied on plaintiff's schooling and volunteer activities, but she made no finding that plaintiff exceeded the restrictions in Dr. Prince's report while engaged in those activities. She did not, for instance, cite evidence that plaintiff regularly sat for more than four hours at school, that he regularly stood or walked for more than one hour while volunteering, or that he sat in front of a computer using Facebook for extended times. The ALJ's failure to address these issues is all the more remarkable given the clear directive in the district court's remand order and the existence of testimony from the second hearing addressing these very activities. For instance, plaintiff testified that he attended Globe University in 2012/2013 studying to be a paralegal but did not complete the course. (Tr. at 838.) On questioning by his counsel, plaintiff explained that he relied on the University's

---

[3]It was also appropriate for the ALJ to note that plaintiff was suspected of malingering during a psychiatric admission from November 26 to December 2, 2011. (Tr. at 654-59.) However, given the other flaws in the ALJ's credibility determination discussed in the text, the matter must be remanded.

8

Disability Center for accommodations (Tr. at 862), enrolled in a four-year program that other students completed in two (Tr. at 863), and spent just three hours in class per week (Tr. at 864).[4] Plaintiff testified that he volunteered at Wisconsin Judicare while at Globe University doing secretarial kind of work, two or three days per week but not for a full eight hours. (Tr. at 843-44.) He also reported volunteering as a student ambassador about three days per week, helping other students get around campus, "where to go and who to talk to basically." (Tr. at 844.) Finally, plaintiff testified that he twice volunteered for the Special Olympics in 2012/ 2013, "just folding chairs or something like that, you know, and that's pretty much it." (Tr. at 844.) It is hard to see how any of these limited activities undercut Dr. Prince's report or plaintiff's alleged limitations. This case is like Jelinek v. Astrue, where the court stated:

> Even if we could follow the ALJ's reasoning from the brief references to Jelinek's college coursework and her limited employment, the ALJ's decision did not build a logical bridge between those activities and his conclusion[.] An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence. The ALJ did not do so, and we are hard-pressed to understand how Jelinek's brief, part-time employment supports a conclusion that she was able to work a full-time job, week in and week out, given her limitations. The ALJ did not ask the critical questions about Jelinek's actual work hours or absentee rates in the jobs she held[.] Rather, the record suggests that Jelinek has experienced longstanding problem[s] with absences. The activities the ALJ mentioned reflected only her willingness and ability to stay engaged in commendable but limited endeavors part-time or at her own pace.

662 F.3d 805, 812-13 (7th Cir. 2011) (internal citations omitted).

Finally, the ALJ credited the opinions of the agency consultants that plaintiff could work, finding them "well supported by the preponderance of the evidence" and "entitled to great

---

[4]Plaintiff also testified that he used a computer, reading Facebook or searching the internet for legal related matters, about three days per week. (Tr. at 842-43.) The ALJ did not follow up with how long these internet sessions lasted.

9

weight." (Tr. at 811.) Discounting the opinions of examining physicians in favor of the reports of non-examining consultants "can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014). A conclusory statement that the consultant's report is "well supported" by the record will not suffice. See id.[5]

**II.**

Plaintiff argues that the court should award benefits rather than remanding for further proceedings, noting that the Commissioner has already been given two chances to properly adjudicate the claim. As plaintiff acknowledges, however, while the Seventh Circuit once endorsed a judicial award when the Commissioner displayed "obduracy" in complying with the law, see, e.g., Wilder v. Apfel, 153 F.3d 799, 804 (7th Cir. 1998), the court of appeals later clarified that obduracy alone is not a ground on which to award benefits; "the evidence properly in the record must demonstrate disability." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 357 (7th Cir. 2005); see also Allord v. Astrue, 631 F.3d 411, 417-18 (7th Cir. 2011) (explaining that an award of benefits is appropriate only if all factual issues have been resolved and the record necessitates a finding of disability).

---

[5]The ALJ specifically cited the opinions of the consultants who reviewed plaintiff's first application. (Tr. at 811, citing Ex. 5F, 9F.) As plaintiff demonstrates in his reply brief, those consultants did not see all of the pertinent evidence. The ALJ further stated that the opinions of the consultants who reviewed the subsequent application, finding plaintiff disabled as of June 24, 2013, but not before, would "presumably" be entitled to great weight. (Tr. at 811.) The ALJ did not specifically cite these reports, and her use of the word "presumably" suggests that she may not have actually considered and relied on them. The ALJ cited Exhibit 11F in discussing these reports, but that exhibit consists of medical records from 2011. She may have meant to cite Exhibit 11A, which is the Appeals Council's remand order. At all events, the ALJ did not explicitly rely on the subsequent consultant reports, and judicial review is limited to the reasons supplied by the ALJ in her written decision. See, e.g., Campbell, 627 F.3d at 306.

10

Plaintiff contends that the ALJ in the second decision could not provide any justifiable reason for rejecting the treating source opinions, and that it can only be assumed that this is based upon a lack of countervailing evidence. He concludes that, because there are no factual issues in dispute, the court should remand with a directive to award benefits from September 29, 2009 until June 23, 2013.

While not conceding the ALJ's errors, the Commissioner sensibly leads her brief with an argument for remand for further proceedings rather than an award of benefits. The Commissioner notes that the record does not conclusively show that Dr. Prince's report is well-supported; for instance, she notes the absence of evidence supporting Dr. Prince's limitations regarding exposure to temperature changes or respiratory irritants. She further notes that the agency consultants' reports, particularly those prepared on the subsequent application, provide support for a denial of plaintiff's claim prior to June 24, 2013. (Tr. at 914, 927-28.) As indicated in note 5 above, it is unclear whether the ALJ actually reviewed the consultants' reports on the second application; nevertheless, they do represent contrary evidence which should be considered by the fact-finder.

**III.**

**THEREFORE, IT IS ORDERED** that the ALJ's decision is reversed, and this matter is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of November, 2016.

/s Lynn Adelman
LYNN ADELMAN
District Judge